IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| DEBORAH A. EASON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 10-0823-CV-W-HFS |
| LINCARE, INC. and ALMEDA HUTTON, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Defendant Almeda Hutton has filed a motion to dismiss plaintiff's claims against her, arguing that she cannot be held individually liable under the Missouri Human Rights Act (MHRA). Also pending is plaintiff Deborah Eason's motion to remand. Both center on the question of whether Almeda Hutton was a "supervisory employee" and therefore an "employer" subject to liability under the MHRA. For the reasons outlined below, the motion to dismiss will be denied and the motion to remand will be granted.

**I.     Background**

Plaintiff filed this case in the Circuit Court of Jackson County, Missouri, alleging racial discrimination and retaliation under the MHRA against defendants Lincare, Inc., plaintiff's former employer, and employee Almeda Hutton. Plaintiff worked for Lincare as a Patient Account Coordinator assigned to Medicaid Collections and was part of the Medicaid "team." Plf.'s Compl., ¶¶ 10, 15. The complaint identifies Sharon Welch as plaintiff's "direct supervisor," Dina Williams as Welch's "direct supervisor," and Cindy Aukerman as Williams' "direct supervisor." Id., ¶¶ 12-14. In the complaint, plaintiff summarily alleges that Almeda Hutton was an "employer" as defined

by the Section 213.010.7 of the Missouri Human Rights Act. Id., ¶ 3. Plaintiff further alleges that around the end of May 2008, Hutton became "team leader"[1] of the Medicaid team. Plf.'s Compl., ¶ 15. The complaint does not expressly identify Hutton as a "supervisor." According to plaintiff, Hutton was the source of the discriminatory statements and conduct. See id., ¶¶ 17-28.

Although plaintiff and defendant Hutton are both citizens of Missouri (which would otherwise defeat diversity), defendant Lincare removed the case to this court, arguing that Hutton was fraudulently joined because she was not an "employer" under the MHRA and thus plaintiff had no colorable claims against her. After removal, Hutton filed her motion to dismiss, and plaintiff filed her motion to remand.

Here, the outcome of the motion to dismiss Hutton will dictate the outcome of the motion to remand.

## II. Legal Standards

The purpose of a motion to dismiss is to test the legal sufficiency of the claims asserted. When ruling on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must take the alleged facts as true and determine whether they are sufficient to raise more than a speculative right to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). The court does not, however, accept as true any allegation that is a legal conclusion. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). The complaint must have "'a short and plain statement of the claim showing that [plaintiff] is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555

---

[1] A position statement from Lincare submitted during the EEOC administrative proceedings referred to this position as "Senior Patient Account Coordinator." Ex. 3 to Doc. 10.

(quoting Fed. R. Civ. P. 8(a)(2)) and then Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated by Twombly, supra). Although detailed factual allegations are not necessary, a complaint that contains "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" is not sufficient. Twombly, 550 U.S. at 555. A complaint must set forth "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. If the claims are only conceivable, not plausible, the complaint must be dismissed. Twombly, 550 U.S. at 570.

**III. Analysis**

As noted, both motions turn on whether defendant Hutton was an "employer" under the Missouri Human Rights Act's definition. In the MHRA, the term "employer" includes in part "any person employing six or more persons within the state, and any person directly acting in the interest of an employer." Mo. Rev. Stat. § 213.010.7. In 2009, the Missouri Supreme Court interpreted that definition as giving rise to individual liability in certain circumstances. "The statute is clear that the MHRA is intended to reach not just the corporate or public employer but any person acting directly in the interest of the employer. A supervisory employee clearly falls into that category." Hill v. Ford Motor Co., 277 S.W.3d 659, 669 (Mo. en banc 2009). Research has not revealed any Missouri appellate decisions after Hill that have defined "supervisory employee."

In seeking dismissal, Hutton argues that plaintiff has failed to provide any facts supporting her allegation that Hutton qualifies as an "employer." Citing Alhalabi v. Mo. Dep't of Natural Resources, 300 S.W.3d 518, 529 (Mo. App. 2009), Hutton contends that plaintiff has not alleged that Hutton "had any managerial authority 'beyond that of mere "ministerial" employees.'" Moreover,

3

plaintiff does not allege that Hutton was her supervisor; instead, plaintiff identifies Sharon Welch as her "direct supervisor." Hutton also asserts that the definitions of "supervisor" in the NLRA and "executive employee" in the FLSA are analogous and that under those definitions, Hutton would not qualify.

In response, plaintiff argues that identifying Hutton as a "team leader" in the complaint "connotes a supervisory relationship." Attached to the opposition to dismissal is an affidavit from plaintiff supporting Hutton's alleged supervisory role. The affidavit states in part that Hutton had "direct contact, knowledge and supervision" as to plaintiff's activities at Lincare, that Hutton gave plaintiff work orders and job assignments, and that Hutton "expected regular updates" on plaintiff's work. Ex. 1 to Doc. 10, p. 1. Further, after Hutton became team leader, "there was to be no more direct contact with Sharon Welch regarding work related matters." Id. at 2. The affidavit also stated that Hutton "had input regarding Performance Reviews of me and other members of our department." Id. Another attached affidavit by fellow employee Courtney Hockman contained similar statements, but did not allege Hutton was involved in performance reviews. Ex. 2 to Doc. 10. Plaintiff also points to Lincare's EEOC position statement, which characterizes Hutton as "a Senior Patient Account Coordinator ["Sr. PAC"] who assisted the area with training, workflow, delegation of work, etc." Ex. 3 to Doc. 10, p. 2. The position statement also stated: "The Senior PAC was a new group leader that had been transferred in from another department. The group went from having very little direct supervision to full one-on-one supervision . . . ." Id., p.3.

In reply, Hutton argues that her role as "team leader" is distinguishable from the role of a supervisor. While Hutton acknowledges that input regarding performance reviews would be a "supervisory-type duty," she states that this allegation in plaintiff's affidavit is "without foundation"

4

and that Hutton in fact "had no role whatsoever in employee performance evaluations."[2]

Based on the limited factual record, it is premature to make a determination as to whether Hutton is a "supervisory employee"[3] and therefore an "employer" under the MHRA. The complaint does allege that Hutton was a "team leader," and the duties of Hutton as described in the affidavits are arguably supervisory in nature. The alleged input of Hutton in performance reviews of plaintiff and others (while disputed by Hutton) is no doubt a supervisory function. Plaintiff's complaint could have alleged Hutton's supervisory duties in more detail, but it does set forth "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Moreover, taking the facts alleged in the complaint as true, the court finds that they are sufficient to raise more than a speculative right to relief. Id. at 555-56. Thus, the motion to dismiss must be denied at this early stage in litigation.

Turning briefly to the motion to remand, plaintiff argues that Lincare's assertion of fraudulent joinder is without merit. "Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Wiles v. Capitol Indemnity Corp., 280 F.3d 868, 871 (8th Cir. 2002). As discussed above, there is a "reasonable basis in fact and law" to support a claim against defendant Hutton, because she may well be a "supervisory employee" (and thus an "employer") and therefore subject to individual

---

[2] Hutton's assertion is not supported by affidavit or other evidence.

[3] Although Hutton is quick argue for limitation of individual liability under the MHRA to the "supervisory employee," the Hill decision might well be interpreted more expansively, as it does emphasize that it applies to "any person acting directly in the interest of the employer." Hill, 277 S.W.3d at 669. By holding that a supervisory employee "clearly falls into that category," the Hill court left the door open for liability as to employees wielding less power in the workplace.

liability under the MHRA. As a result, the court finds that the joinder of Hutton was not fraudulent. Because Hutton's Missouri citizenship can no longer be ignored, complete diversity does not exist and the motion to remand must be granted.[4]

Accordingly, it is hereby

ORDERED that defendant Almeda Hutton's motion to dismiss (ECF doc. 6) is DENIED. It is further

ORDERED that plaintiff's motion to remand (ECF doc. 9) is GRANTED. Upon entry of this order, the Clerk of the Court shall remand the above-referenced case to the Circuit Court of Jackson County, Missouri, under case number 1016-CV20515.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

March  29 , 2011

Kansas City, Missouri

---

[4] This order might not be the end of potential federal court involvement. After remand to state court, if Hutton's version of the facts is well supported following discovery, she could file a motion for summary judgment on the issue of her individual liability under the MHRA. If the Circuit Court granted summary judgment, Hutton would be out of the case, complete diversity would exist and the case would once again become removable.